IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JUSTIN JAMES a/k/a Hurricane                                                    PETITIONER

V.                                                                NO. 4:17-CV-129-DMB-JMV

STATE OF MISSISSIPPI                                                           RESPONDENT

# ORDER

Justin James' petition for a writ of habeas corpus is before the Court on the Report and Recommendation of United States Magistrate Judge Jane M. Virden. Doc. #11.

## I
## Procedural History

On September 20, 2019, Justin James was convicted by a jury of one count of armed robbery (Count One), one count of manslaughter (Count Two), two counts of aggravated assault (Counts Three and Four), and one count of conspiracy to commit armed robbery (Count Five). Doc. #9-7 at PageID #485. James was sentenced to twenty years each for the convictions on Counts One through Four, and five years for the conviction on Count Five. *Id*. at #486. Under the terms of James' judgment, the sentences on Count Two and Count Three run concurrently with each other; the sentence on Count Four runs consecutively with the sentences on Counts Two and Three; the sentence on Count One runs consecutively with the sentences on Counts Two through Four; and the sentence on Count Five runs concurrently with the other sentences. *Id*.

James directly appealed his convictions and sentence on five grounds:

(1) whether the trial court erred by refusing [a] jury instruction as to the weight of the evidence; (2) whether the trial court erred by refusing Defendants' jury instruction as to accomplice testimony; (3) whether the trial court erred by refusing James's jury instruction as to his theory of the case; (4) whether the trial court's form of the verdict was erroneously worded; and (5) whether juror misconduct denied Defendants a fair and impartial trial.

*James v. State*, 146 So. 3d 985, 991 (Miss. Ct. App. 2014). The Mississippi Court of Appeals rejected each enumeration of error and affirmed the lower court. *Id.* Certiorari was denied. *James v. State*, 146 So. 3d 981 (Miss. 2014).

James later sought post-conviction relief on the ground that Barry Love, one of the witnesses during his trial, recanted his testimony. *James v. State*, 220 So.3d 989 (Miss. Ct. App. 2016). James' petition was denied in the trial court and affirmed on appeal. *Id.* at 990–91. Certiorari was also denied. *James v. State*, 220 So. 3d 979 (Miss. 2017).

On November 30, 2017, James filed in the United States District Court for the Northern District of Mississippi an amended[1] petition for a writ of habeas corpus seeking relief from his sentence and convictions. Doc. #4 at 1. James' amended petition asserts four grounds for relief: (1) "Whether the Circuit Court erred in denying his theory of the case instruction" (Ground One); (2) "Whether the trial court erred in denying his accomplice instruction, D-7" (Ground Two); (3) "Whether the trial court erred in denying his motion for new trial based on jury misconduct" (Ground Three); and (4) "Whether the trial court erred in denying [his] Motion for Post-Conviction Collateral Relief based on the recanted testimony of the state's main material fact witness, co-defendant Barry Lowe" (Ground Four). *Id.* at 3. The respondents, at the direction of United States Magistrate Judge Jane M. Virden, responded to the amended petition on March 12, 2018. Doc. #8. James filed an untimely traverse on May 6, 2018. Doc. #10.

On August 14, 2018, Judge Virden issued a Report and Recommendation ("R&R") recommending that James' petition be denied. Doc. #11. On September 6, 2018,[2] James filed

---

[1] James' original petition asserted no specific grounds for relief. *See* Doc. #1.
[2] James sought and received an extension to file his objections. *See* Doc. #16.

2

objections to the R&R. Doc. #13. The State responded to the objections on September 20, 2018. Doc. #15.

**II**
**Standard**

Under 28 U.S.C § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report … to which objection is made." "[W]here there is no objection, the Court need only determine whether the report and recommendation is clearly erroneous or contrary to law." *United States v. Alaniz*, 278 F.Supp.3d 944, 948 (S.D. Tex. 2017) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)).

**III**
**Analysis**

James' response to the R&R challenges only Judge Virden's conclusions as to Ground Two and Ground Four. *See* Doc. #13. However, before addressing the merits of these objections, it is important to clarify the appropriate standard of review for James' petition.

Where a petitioner's claims were considered on the merits in state court, habeas relief is only appropriate if the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The respondents argued, and Judge Virden agreed, that § 2254(d)'s deferential standard applies here. Doc. #11 at 10. However, there is no indication the federal claims at issue here were raised in state court, much less addressed on the merits by any state court decision. Though James' direct appeal brief cited a general federal standard regarding jury instructions, his arguments

regarding jury instructions were confined exclusively to the application of state law. *See* Doc. #9-19 at PageID ## 2023–28. James' post-conviction relief briefing contains no reference to federal law at all. *See* Doc. #9-3. Federal law was not discussed in either Mississippi Court of Appeals decision. Under these circumstances, the Court concludes James' federal claims were not adjudicated on the merits in state court. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013) ("[A] state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim."). To the extent the R&R held otherwise, this was error.

### A. Ground Two—Accomplice Instruction

At his trial, James proffered the following instruction, labeled as D-7:

An accomplice and an accomplice's testimony have to be considered very carefully by you. In the first place, he admits that he has committed a crime, and you can find that a person who has committed one crime may be more likely than others to commit perjury. In the second place, he may be amenable to a suggestion by the Government because he is trying to court the prosecution's favor in return for avoiding some degree of punishment himself.

If you believe from the evidence that any person was induced to testify in this case by any promise of immunity from further punishment, or that any hope was held out or entertained by him that he would be rewarded or in any way benefit if he implicated any of the Defendants in the crimes charged herein, you must take such facts into consideration in determining what weight should be given to the testimony, closely scrutinize it, and unless you can reconcile it with truth, completely reject it.

In weighing the testimony of a witness who testifies under any promise of immunity or award, the jury must consider that such promise of immunity or award of itself is a compelling reason for the witness to color and fabricate his testimony, and that such testimony must be weighed with a great deal of care and circumspection.

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony; or by evidence that the witness has been convicted of a felony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness, or give it such credibility as you may think it deserves.

The motives of an accomplice in testifying, and the circumstances under which his testimony is given, should be considered in determining how much weight and credibility his testimony should be given.

In determining the weight and consideration of the testimony of an accomplice you must consider whether there has been any promise to him or indication of favorable treatment for him or actual benefit conferred, promised or indicated by the circumstances of the case.

You are instructed that Tommy White, Krystal While and Corliss Washington are co-defendants named in this indictment. They are self-confessed accomplice. [sic] An accomplice, when he gives evidence against persons who he claims committed the crimes charged in this indictment, may be compelled to do so by motives which are inclined to pervert the truth. In other words, he may have reason for telling a lie and it is your duty to give careful consideration to that question. An accomplice, tainted as the witness is with confessed criminality, is often influenced in his testimony by strong motives of favor or pardon. You may give his testimony such weight as you think it deserves. Whether or not his testimony may have been influenced by his desire to please the government or to strike a good bargain with the government about his own situation is for you to determine.

The witnesses who testified for the Government are named as co-defendants with the Defendant. Some of them have pleaded guilty to the crimes charged in the indictment. While the testimony of co-defendants who admit their guilt or participation in the conspiracy need not be corroborated; it should be scrutinized by you with much greater care than that of any other witness. You should particularly consider the interest or motive that these witnesses have in giving their testimony in this case. For when a witness has an interest, the temptation is strong to color his testimony or fabricate-certain facts. You should weigh all of these factors in considering how far and to what extent the testimony of such witnesses is worthy of belief.

Doc. #9-7 at PageID ##458–60.

The trial court rejected D-7 in favor of S-3, which stated:

> The Court instructs the Jury that Barry Love is an accomplices [sic] in this case and the testimony of an accomplice is to be considered and weighed with great care and caution. You may give it such weight and credit as you deem it is entitled.

*Id*. at PageID # 443.

James' amended petition is cursory and offers little to no authority on each asserted ground. *See* Doc. #4. His traverse is little better. *See* Doc. #10. He simply argues in conclusory fashion that his proposed "accomplice instruction" should have been given by the trial judge. *Id*. at ¶ 5. Judge Virden found the accomplice instruction was properly rejected because Love's testimony that James participated in the relevant crimes was corroborated by non-accomplice evidence and because an accomplice instruction was given, "albeit in a shortened state." Doc. #11 at 17. James objects to the R&R on the grounds that the allegedly corroborating evidence was not corroborating. Doc. #13 at 1–2. He does not address the fact that an accomplice instruction was given.

> Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. In examining habeas claims of improper jury instructions, the inquiry is not whether there was prejudice to the petitioner, or whether state law was violated, but whether there was prejudice of constitutional magnitude. The relevant inquiry is whether the failure to give an instruction by itself so infected the entire trial that the resulting conviction violates due process. Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted.

*Galvan v. Cockrell*, 293 F.3d 760, 764–65 (5th Cir. 2002) (citations, alterations and quotation marks omitted). Under this standard, a "substantively correct instruction" does not violate the federal constitution. *Id*. at 765. Even a substantively incorrect instruction will not justify habeas relief "unless there is more than a mere reasonable possibility that it contributed to the verdict." *Id*. Put differently, a petitioner must show both that an instruction was deficient (or that the failure to give an instruction was deficient) *and* that there is more than a mere reasonable possibility that the deficiency contributed to the verdict. *See generally Maier v. Smith*, 912 F.3d 1064, 1072–73

6

(7th Cir. 2019) ("Maier must show both that the instruction was deficient and that 'there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.'") (quoting *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009)).

"Clear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators with great caution and suspicion." *Williams v. State*, 32 So. 3d 486, 490 (Miss. 2010) (quotation marks omitted). Consistent with this law, an accomplice jury instruction must be given when (1) "the witness was in fact an accomplice" and (2) the testimony is not otherwise corroborated. *Id*. The Mississippi Supreme Court recently clarified that when an accomplice instruction is warranted, the trial court should give the following instruction:

> During the course of his testimony in this trial, the witness John Doe claimed to have participated with the defendant in [the crime for which the defendant is on trial]. Doe is an admitted accomplice, and, as such, the jury should consider his testimony with great caution and suspicion. The jury is the sole judge of the credibility and the believability of all the witnesses, and it is for the jury to decide how much weight and worth, if any, to give the testimony of the witnesses, including Doe. As you consider Doe's testimony, you may accept such portions, if any, that you deem credible, and reject such portions, if any, that you do not deem worthy of belief.

*Jones v. State*, __ So. 3d __, No. 2018-KA-01060-SCT, 2019 WL 4198794, at *7 (Miss. Sep. 5, 2019). However, even before this clarification, Mississippi law was clear that an accomplice instruction is deficient when it replaces the word "suspicion" with the word "care," as was the case here. *Smith v. State*, 907 So. 2d 292, 297 (Miss. 2005). Accordingly, if an accomplice instruction was required, the trial judge's refusal to give D-7 (or an otherwise proper accomplice instruction) was legally deficient under Mississippi law.

The Mississippi Court of Appeals, in James' direct appeal, found an accomplice instruction was unnecessary because Love's testimony was corroborated by other evidence. *See James*, 146

7

So. 3d at 993–94. Corroboration requires evidence supporting the accomplice's guilt to the specific crimes. *See Williams*, 32 So. 3d at 491 ("[T]he testimony that must be corroborated is the testimony tying the defendant on trial to the crime …."); *Carson v. State*, 212 So. 3d 22, 28 (Miss. 2016) (post-crime confession to involvement in robbery not corroboration of accomplice testimony identifying defendant as shooter). Such corroboration need only be "slight[.]" *Grossley v. State*, 127 So. 3d 1143, 1150 (Miss. Ct. App. 2013).

Here, the Mississippi Court of Appeals found Love's testimony connecting James to the armed robbery at issue was specifically corroborated because Love testified that (1) the robbers used James' white Cadillac to commit the crime, and a separate witness saw a white Cadillac near the location of the robbery on the night in question; (2) one of the robbers carried a Tec-9 handgun, and a 9mm round was found in James' car; and (3) the robbers made numerous phone calls amongst themselves on the night in question, and subpoenaed phone records showed calls between the robbers. *James*, 146 So. 3d at 993–95. Judge Virden agreed with this conclusion.

In his objections, James argues there was no corroboration because:

> James' phone records indicate that a call attributed to him factually was recorded off a tower that was not in the city limits. The State never proved that the white Cadillac scene [sic] by witnesses in the area was in fact James. Likewise, there was no testimony that the unspent 9-millimeter round in James's car after the shooting was connected to the shooting.

Doc. #13 at 2.

As an initial matter, James has pointed to nothing in the record which supports his factual contention regarding the location of the cellular tower which provided the evidence of the allegedly corroborating phone call. Even if he had, James has offered no evidence or argument as to *why* the tower being "not in the city limits" renders the call not corroborating. *Id.* James' remaining arguments seem to rely on an assumption that corroboration requires evidence definitively

8

supporting the accomplice's testimony. This is of course not the standard, which requires only "slight" corroboration. *See Stribling v. State*, 81 So. 3d 1155, 1161 (Miss. Ct. App. 2011) (testimony of drug sale corroborated by video showing transfer of "three or four small objects"). Love's account of the robbery and James' involvement, which includes identification of the car used, phone calls between the alleged robbers, and possession of a 9-mm firearm, is indisputably corroborated by the non-accomplice evidence identified by the Mississippi Court of Appeals and Judge Virden. Accordingly, the Court concludes that an accomplice instruction was not required and that James' contention to the contrary is without merit.

### B. Ground Four—Recanted Testimony

Sometime after James' convictions, Love, through an affidavit, recanted his testimony linking James to the crimes. *See* Doc. #8-2. This affidavit formed the basis of James' petition for post-conviction relief. *Id*. Following an evidentiary hearing at which Love testified, the trial court, noting that Love's new testimony was uncorroborated and that his initial testimony was corroborated by other evidence, found "the recanted testimony to be totally fabricated and not true." Doc. #9-1 at 29. Accordingly, the trial court denied post-conviction relief. *Id*. The Mississippi Court of Appeals affirmed these findings. *James*, 220 So. 3d at 990.

James' amended petition challenges the rejection of his post-conviction petition but offers no specific argument in this regard. His traverse argues post-conviction relief was warranted because:

> Respondent has shown no motive for Barry Love, James' co-defendant and the State's main fact witness against him at trial, to falsify his recanted testimony. Nor is there evidence that Love and James conspired or colluded to falsify Love's trial testimony. Love is not related to James. In fact Love and James are in rival gangs and mortal enemies. Love has no hope of getting his sentence reduced by testifying falsely for James. Love's testimony that James's [sic] is actually innocent is not merely impeaching or cumulative and is a sufficient basis for a new trial based on newly discovered evidence.

9

Doc. #10 at 7.

Judge Virden, after reciting the substance of Love's affidavit and hearing testimony, and noting the presumption of correctness afforded state court findings of fact and credibility, rejected James' argument because "other than Petitioner's fanciful and frankly unpersuasive affidavit from his co-defendant … Petitioner offers no evidence that would rebut the presumption that the trial court's findings are correct or support a finding contrary to that of the circuit court." Doc. #11 at 26–27. In his objections, James argues:

> The trail [sic] court's finding that Love's affidavit is inconsistent with his prior testimony belies the fact that all recanted testimony is inconsistent with the prior trial testimony. The trial court's apparent misunderstanding of what constitutes recanted testimony underscores its finding that Love's affidavit is suspect is a gross understatement.
>
> Neither the trial court nor the Report and Recommendation address James' reasons for crediting Love's recanted testimony other than the misconception that there are [sic] other corroborating evidence of guilt. James, conversely, has shown, and the State has not disprove [sic], that Love has no motive to lie. Also, the reason Love gives for his after arest [sic] statements and testifying falsely at trial are plausible. In fact, that Love and James are in different gangs show that Love has no motive to do anything that benefits or assists James. In fact just the opposite is the truth. It instead shows that Love has every reason not to do anything that benefits or assists James.

Doc. #13 at 2–3. Based on these arguments, James contends "the state court's decision was based on an unreasonable determination of the facts in light of the evidence" and "result[ed] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law …." *Id.* at 3.

"To establish a due process violation based on the government's use of false or misleading testimony, [a petitioner] must show that (1) the testimony in question was actually false; (2) the testimony was material; and (3) the prosecution had knowledge that the testimony was false." *United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004). Even assuming Love's recantation

10

could be deemed credible, James has offered no evidence or argument that the State knew the testimony was false. Accordingly, he is not entitled to habeas relief.

### C. Remaining Portions of the R&R

The Court, cognizant of the misapplied deferential standard, has reviewed the portions of the R&R to which James has not objected and has found no clear error in the ultimate conclusions. Such portions of the R&R, which rejected James' remaining grounds for habeas relief and denied an evidentiary hearing, are adopted as the order of the Court.

## IV
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Proceedings for the United States District Courts requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. Based on the *Slack* criteria, the Court finds that a COA should not issue in this case.

## V
## Conclusion

The Report and Recommendation [11] is **ADOPTED in Part and REJECTED in Part**. The Report and Recommendation is REJECTED to the extent it is inconsistent with the analysis

11

above. It is adopted in all other respects. James petition for a writ of habeas corpus [1] is **DENIED**.

**SO ORDERED**, this 6th day of December, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**